UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARTER COMMUNICATIONS, Inc., <br> *Plaintiff*, <br><br> v. <br><br> BRIDGER MAHLUM, <br> *Defendant*. | ) <br> ) <br> ) CASE NO. 3:23-cv-1106 (OAW) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**RULING ON MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**THIS ACTION** is before the court upon Plaintiff's ex-parte motions for a temporary restraining order and a preliminary injunction.  ECF No. 1.  For the reasons hereinafter set forth, Plaintiff's motion is **GRANTED in part**.

**I.   BACKGROUND**

Charter Communications, Inc, ("Charter" or "Plaintiff") has filed an ex-parte motion[1] for a temporary restraining order and a preliminary injunction against Bridger Mahlum ("Mahlum" or "Defendant").  Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 65(b), the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. § 35-50 *et seq.*, as well as the Restricted Stock Unit Agreements ("RSU Agreements") between Charter and Mahlum.

Mahlum was hired by Charter in April of 2022 as the Director of Government Affairs, a position he held until July 2023.  *See* Compl. ¶ 3, ECF No. 1.  In his position as

---

[1] The motion for preliminary injunction and temporary restraining order were nested within Plaintiff's complaint.

Director of Government Affairs, Mahlum was responsible for "rural development" and "obtaining broadband subsidy funding across several states, including, but not limited to, Montana." *Id.* ¶ 4. During his employment with Charter, Mahlum executed three RSU Agreements: on May 16, 2022, September 15, 2022, and January 17, 2023. *See* Restricted Stock Unit Agreement, Ex. A ¶ 6.3.3, ECF No. 1-2; Restricted Stock Unit Agreement, Ex. B ¶ 6.3.3, ECF No. 1-3; Restricted Stock Unit Agreement, Ex. C ¶ 6.3.3, ECF No. 1-4. All three agreements awarded Mahlum various stocks and incentives and included, among other things, a covenant for a "six-month Restricted Period" in which Mahlum would not compete with Charter by "providing the same or similar services he provided to Charter to any Competitive Business in geographic locations where Charter conducts business." *Compl.* ¶ 6, ECF No. 1.

In July 2023, Mahlum announced his resignation from Charter. *Id.* ¶ 14. Then, on August 1, 2023, Mahlum obtained appointment with BroadbandMT, which Charter alleges is its "direct competitor." *Id.* ¶¶ 7–8. In light of these facts, Charter argues that Mahlum has violated CUTSA and the non-competition and confidentiality terms of his RSU Agreement with Charter by obtaining employment with BroadbandMT. *Id.* ¶ 6.

In its motion, filed without the presence of Defendant, Plaintiff seeks an order which, pending the outcome of arbitration:

> [1] Prohibits Malhum from performing any further services for BroadbandMT or any other competitor that would violate or potentially violate the restrictions contained in the relevant RSU Agreements;

[2] Prohibits Mahlum from using or disclosing Charter's confidential or trade secret information purusnat to Conn. Gen. Stat. § 35-52;

[3] Prohibits Mahlum from taking any further action that would violate the restrictive covenants contained in the RSU agreements; and

[4] Tolls the time periods applicable to the restrictive covenants contained in the RSU Agreements, from the date Mahlum first violated those terms to the latest date provided in the RSU Agreements.

See id. at 29–30.

## II. LEGAL STANDARD

"The traditional standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). In order to obtain a preliminary injunction, a party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, L.L.C. v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

### III. DISCUSSION

#### A. Irreparable Harm

The court first starts by analyzing whether Plaintiff has adequately demonstrated irreparable harm in the absence of the injunction. The court finds that it has.

The Second Circuit has ruled that "'loss of trade secrets cannot be measured in money damages' because '[a] trade secret once lost is, of course, lost forever.'" *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (per curiam)). There is a "rebuttable presumption of irreparable harm . . . where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider or audience or otherwise irreparably impair the value of those secrets." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.2d 110, 118–19 (2d Cir. 2009). The mutual, contractual acknowledgement between the employer and the employee that breach of confidentiality clause or non-competition clause would cause irreparable injury weighs in favor of finding the same. *See id.* ("[Defendant] acknowledged in his Employment Agreement that a breach of the confidentiality cause would cause 'irreparable injury' to [Plaintiff].") (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)); *Morgan Stanley Smith Barney LLC v. O' Brien*, 3:13-cv-1598(VLB), 2013 WL 5962103, at *7–8 (D. Conn. Nov. 6, 2013).

Mahlum's role at Charter was obtaining government subsidy funding for broadband service across several states. Compl. ¶ 4, ECF No. 1. The bidding

4

and application process for government subsidies had Charter and other service providers in the area "directly compete" over a finite amount of government funding.  *Id.* ¶ 11.  Plaintiff considered Defendant's services to be of a "special, unique, unusual and extraordinary" nature and Defendant believed it to be the same.  *See* Restricted Stock Unit Agreement, Ex. A ¶ 6.3.3, ECF No. 1-2 (executed May 16, 2022); Restricted Stock Unit Agreement, Ex. B ¶ 6.3.3, ECF No. 1-3 (executed September 15, 2022); Restricted Stock Unit Agreement, Ex. C ¶ 6.3.3 (executed January 17, 2023).  The unique nature of the working relationship between Charter and Mahlum is attributable, in part, to the "trade secrets and Confidential Information" that Mahlum would obtain in performing his role.  Compl. ¶ 45.  The trade secrets in question derive their value, at least in part, from the competitive edge that they would afford Charter in the bidding and application process for government subsidy.  *See id.* ¶¶ 10–11.  By being used in bidding and application processes by direct competitors of Charter, these trade secrets lose their value because they no longer afford Charter a competitive edge.  Put differently, if used by direct competitors, these trade secrets could undermine Charter's probability of obtaining government subsidy and, through that process, the trade secrets themselves lose value.

      This loss in valuation of the trade secrets is irreparable because government subsidy and grants thereof are zero-sum: the government has a finite pool of funds and when it awards a certain amount of subsidy to an applicant, that amount is no longer available for any other applicant.  *See* Eric Dietrich, *Few Eastern Montana Projects in $258 Million Broadband Proposal*, Mt. Free Press

https://montanafreepress.org/2022/08/12/258-million-montana-broadband-grant-plan-draws-debate/ [https://perma.cc/E83M-3H4H] (Aug. 12, 2022) (reporting that the subsidy awarded to Charter was no longer available to smaller, Montana-based companies).  Significance of the sum of grants aside, missing out on the grant has a ripple effect, where the broadband service providers may lose their opportunity to "expand their footprint, grow their customer base, and increase their revenues." Compl. ¶ 11, ECF No. 1.  Not only would it be near impossible to calculate the monetary damages that would adequately remedy such a setback, but without clear indication of when, if at all, these government subsidies would be available next, the setback may not be fully remedied.

The value ascribed to the trade secrets and confidential information was such that both Plaintiff and Defendant have agreed that the violation of the non-competition terms of the RSU Agreements would cause irreparable harm which "an award of monetary damages would be inadequate."  *See* Restricted Stock Unit Agreement, Ex. A ¶ 6.7, ECF No. 1-2 (executed May 16, 2022); Restricted Stock Unit Agreement, Ex. B ¶ 6.7, ECF No. 1-3 (executed September 15, 2022); Restricted Stock Unit Agreement, Ex. C ¶ 6.7 (executed January 17, 2023).

In light of the facts alleged in the complaint and the motion for temporary restraining order, the court finds that Plaintiff has sufficiently demonstrated irreparable harm in the absence of an injunction.

### B. Likelihood of Success

Plaintiff has demonstrated the likelihood of success on the merits as well. Plaintiff's claims are pursuant to CUTSA and the RSU Agreements.

Connecticut law states that "[a]ctual or threatened misappropriation may be enjoined upon application to any court of competent jurisdiction."  Conn. Gen. Stat. § 35-52.  Misappropriation is defined in the abutting section as "disclosure of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that [their] knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  *Id.* § 35-51(b)(2)(B)(ii) (cleaned up).  All three RSU Agreements carefully define the working relationship between Charter and Mahlum.  All three agreements also clearly state the limitation on the use of trade secret or confidential information.  *See* Restricted Stock Unit Agreement, Ex. A ¶ 6.3.2, ECF No. 1-2; Restricted Stock Unit Agreement, Ex. B ¶ 6.3.2, ECF No. 1-3; Restricted Stock Unit Agreement, Ex. C ¶ 6.3.2, ECF No. 1-4.

In accepting a position with BroadbandMT as a General Manager, Defendant seems to have breached the clear language of all three RSU Agreements, in which he agreed not to "be employed by a 'Competitive Business'" or "perform any work as an employee."  *See* Restricted Stock Unit Agreement, Ex. A ¶ 6.3.2, ECF No. 1-2; Restricted Stock Unit Agreement, Ex. B ¶ 6.3.2, ECF No. 1-3; Restricted Stock Unit Agreement, Ex. C ¶ 6.3.2, ECF No. 1-4.

## IV.  CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's motion for temporary restraining order and preliminary injunction is granted in part:

    a. The court shall rule on Plaintiff's motion for preliminary injunction after the matter is fully briefed in the presence of Defendant.

    b. Pending the outcome of arbitration, Defendant Mahlum shall not provide services for BroadbandMT or any other competitor which violate any reasonable non-compete clauses in the RSU Agreements.

    c. Pending the outcome of arbitration, Defendant Mahlum shall not use or disclose Charter's confidential information or trade secret information pursuant to Connecticut Uniform Trade Secret Act.  *See* Conn. Gen. Stat. § 35-52.

    d. Pending the outcome of arbitration, Defendant Mahlum shall not take any further action that would violate any other reasonable non-compete clauses within the RSU Agreements.

    e. The time limitation applicable for the restrictive covenants included in the RSU Agreements shall be tolled, beginning from the date Mahlum first violated those covenants through the last date provided for in the RSU Agreement signed most recently.

2. The above-named Defendant shall show cause before this court why a preliminary injunction should not be issue pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED** in Hartford, Connecticut, this 30th day of August, 2023.

                                                    _/s/_
                                      OMAR A. WILLIAMS
                                      UNITED STATES DISTRICT JUDGE